All right, Council, welcome back. Our next case is 20-4123, United States v. Zajac, and Ms. Pirrie, you may proceed. Thank you. May it please the Court, Bretta Pirrie on behalf of Mr. Thomas Zajac. A single threat runs through this Court's allocution jurisprudence and through Rule 32 as well, and it is this, that a defendant, before a sentence is imposed, has a right to address the Court, to offer a statement, and to offer any information in mitigation, and to have that right effectively communicated to him. That is not what happened in this case. What was effectively communicated to Mr. Zajac was that he would have an opportunity to address a proposed sentencing procedure. And we know this from context. We know that was effectively communicated to Mr. Zajac by the way in which the District Court set up the purported invitation to allocute, Mr. Zajac's response to it, and in turn, the District Court's response to what Mr. Zajac said in response to the purported invitation to allocute. If we turn to what Mr. Zajac said in response, he spoke some 131 words when the District Court gave him a chance to address the Court. At a modest count, 51 of them expressed nothing more than confusion. He said things like, I understood that, and then a few moments later that it deteriorated to, I thought I understood that. I thought that, and then he gives a fairly long sentence about, well, I just don't understand the nomenclature, so I don't know what the District Court is describing when he breaks this into three groups, and so I don't know what to say. That was Mr. Zajac's response. This is not the response of someone who's been given an invitation to make a statement or to offer information in mitigation. This is the statement of a student in a class pointing at the board and saying, huh? Does it matter that the defendant had been through a federal sentencing proceeding before and had the right of allocution? Should we factor that in in determining whether he was confused? I don't think so, Your Honor, given how clear Mr. Zajac's confusion was and given that, I mean, he's hardly an expert in allocution. He'd done it once 11 years before, and so I think it would be unfair to say that he understood in the light of this allocution that strongly suggested that the only thing he was free to talk about was the proposed sentencing procedure. An invitation to allocute, I think the proper frame of reference is not judges who've read a thousand sentencing transcripts, but it's what was effectively communicated to this defendant, and this defendant's response is the best measure of what was effectively communicated to him. And if that weren't enough, I think we would move on to what the District Court did in response, which was to respond exactly in kind. So Mr. Zajac said, I don't understand the terminology. I don't understand the nomenclature. I don't know what you're talking about when you talk about three groups. And so the District Court responded to that by saying, let me explain it to you, and he gave them a little primer on sentencing procedure, which was, you know, we start with 3553, and then, you know, I have to calculate the guidelines correctly, but I'm free to vary from the guidelines, and then wound up with this firm statement to Mr. Zajac that was hardly an invitation to offer statement of mitigation. It was, you need to understand that I'm going to vary upwards, to which Mr. Zajac meekly responded, okay, and then the District Court proceeded to impose sentence. He did the government... Do our cases suggest it's an objective standard? I mean, we're looking at a, you know, a written record here. You know, I think you're inviting us to, you know, enter into the mind of the defendant, and, you know, can, I mean, we're looking for an objective indicia, or can we kind of make a subjective assessment, which would really require us kind of on a case-by-case, defendant-by-defendant basis to assess whether, you know, a particular person understood the scope of the allocution right. I want to make sure we have a practical legal principle here that we can apply in other cases if we rule in your client's favor. I think ruling in Mr. Zajac's favor would be entirely consistent with the principles this Court has articulated. There is often objective evidence in the record of what was effectively communicated to the defendant, because that's the right, what was effectively communicated to a defendant, and this Court frequently looks to how the defendant responded. In Frost, in Feast, the District Court gave on its face a perfectly acceptable invitation to allocute in Frost, but from context, it was clear that the District Court had already made up its mind as to what the sentence was, and so to resolve this problem, to see whether the defendant had actually enjoyed the right to allocute, the Court looked at what defendant said, and the defendant there gave a long speech about the things that client, that defendants do when they're offering information and mitigation, and so that's an objective standard. What's in the record, what is the response, shows what was effectively communicated to this defendant, and I also want to make sure... What do we do if there's a, if there's tension there? I mean, if the test is clearly objective, we look at what the advisement was and say, was that advisement clear? But we are, we can be informed, but perhaps only at the margins of that question, by how the defendant responded. So what if the advisement was absolutely clear and consistent with what we've approved on other occasions? The defendant gets up and says, I don't understand, I don't know what you're asking of me, so unless I know what you're asking of me, I have nothing to say. So it's clear the defendant was confused, but it is clear that the advisement was perfect. What do we do? Which trumps? Do we look at the objective and say, it's done? Or do we say, the objective requires the court to recalibrate when it appears that the defendant didn't understand? That's kind of a new step, if we go that far. This court has said in an unpublished opinion cited in the government's brief, that a defendant's subjective confusion doesn't transform an objectively clear invitation to allocute into something that's somehow objectively unclear. But I would point out that in that same case, this court distinguished a Fifth Circuit case, where the Fifth Circuit found that on fairly similar facts here to those in Mr. Zajac's case, where the district court made a purported invitation to allocute, which seemed pretty clear, but the defendant also went back and forth with the district court and clearly thought this was an invitation to comment on a particular factual question, not an invitation to allocate. And what this court said in distinguishing Platero from that Fifth Circuit case was, in Platero, we didn't have this back and forth. There was no reason for the district court to think that the defendant was confused, because the defendant said very little in Platero. That's not the case in Mr. Zajac's case. Mr. Zajac's case is much closer to the Fifth Circuit case that Platero distinguishes, where the district court had every reason to understand that Mr. Zajac didn't get it. There was a long back and forth, where Mr. Zajac said, I don't get it, and the district court said, okay, let me explain it to you, and then moved on to sentencing. And so I don't think this question, Judge Ebell, is posed on these facts as starkly as you would have it. There is that unpublished authority, but this case doesn't require this court to determine if subjective confusion transforms an objectively perfect invitation to allocate into something other than what it is. But I do want to point out that this court doesn't decide that an invitation to allocate is objectively perfect based on the words spoken at the moment of the invitation. If that were true, Frost would have been decided the other way, because the words of the invitation to allocate in Frost were perfect. They were along the lines of, does the defendant have anything they want to say to the court at this time? But context made it clear that the district court had prejudged the sentence before making the invitation to allocate. So it is never the case. There's case after case, these Frost, Platero, where it's not just the words at the moment the district court speaks them. Meaning is made by context, and the right of allocution is not the right to a perfect invitation to allocate. The right of allocution is the right to have it effectively communicated to you that you have a right to make this statement of litigation. If we accept your Frost argument, do we have to, your characterization of it, do we have to conclude here that the judge had already determined the sentence? No, that's not the only type of allocution error. There are a variety of types of allocution error. Frost is an example of, a clear example of the defendant's response lending meaning to what the district court says. But in Landerus-Lopez, for example, the allocution error was restricting the defendant's ability to speak to a particular topic as it was in Mr. Zajac's case. So no, we don't have to find the judge had prejudged the sentence. We have to find the particular error in this case was restricting his ability to speak to a particular topic as it was in Mr. Zajac's case. If the court has no further questions, I will reserve my remaining time for rebuttal. Could you just quickly comment on the consecutive sentencing argument and whether that was invited error or not? Of course. I don't think it's possible to on his own, sua sponte, said, I have to run this sentence consecutively to any other sentence I impose. So the district court introduced it, maintained it. Then what happened next was the prosecutor repeated the error. And then after that, the defense counsel repeated the error. But there's nothing on this record to suggest, I mean, there was never an argument from defense counsel. This was just accepting the assumption. At no point did counsel say, yes, I have considered 844-I and it really has to run consecutive to any other sentence. This is merely repeating. This is forfeiture. It's not giving one's mind to a problem rather than affirmatively advocating for a position. If we agree with you on that argument and remand, does that move the allocation error issue here? They could certainly both be resolved at the same time. And they are intertwined because one of the things the government pointed to in their brief was in regard to the consecutive problem with 844-I was that the district court said, well, there's nothing to mitigate this. And the government said, well, this means that if you were to remand it, he would just impose the same sentence. So there's no, there may be a first and second prong problem, but there's no third prong problem because he'd impose exactly the same sentence. What I'm saying is if the court remanded it for resentencing, would that move the allocation error argument? It would allow it to be addressed in the first instance properly by the district court. Yes. I'm not sure I completely understand what you mean by moot, Judge Timcovich. I mean, you wouldn't have to address it if that's what you mean in this opinion, if you were to remand for the clear sentencing error. There'd be a new allocution, right? Exactly. Exactly. And that it could be made clear to him upon remand that this was in fact an allocution opportunity. All right. Thank you, counsel. Let's hear from a U.S. attorney, Ms. Stevens. May it please the court, Elizabeth Ann Stevens, Assistant United States Attorney for the District of Utah. In 2011, when Mr. Zajack had a valid 924C conviction associated with his bombing of the Salt Lake City Library, the district court imposed a 35-year sentence. And the way it reached that sentence was by giving Mr. Zajack five years total on count one, the bombing, plus counts three, four, and five, which were associated with his possession of the destructive device, and count six, the mailing of a threat. The court then gave 30 years consecutively on the 924C count. In 2020, when Mr. Zajack no longer had a valid 924C count, the district court resentenced him to 21 and a half years. And the way the court reached that sentence was to give him 15 years, triple the mandatory minimum on count one for bombing the library. And the guideline range was 63 to 78 months. The district court then high-ended Mr. Zajack on the guidelines and gave him 60 months on the possession counts and an additional consecutive 18 months on count six, mailing the threat. So it's against that background that this court should consider the claims that Mr. Zajack now makes. And I am going to start with issue two first because I do agree that unless the United States prevails and convinces the court on issue two, it will go back to the district court and the allocution claim will be resolved in the course of the new sentencing. So with respect to issue two, Mr. Zajack did induce the court to sentence him to a consecutive sentence because he specifically asked the court at the sentencing hearing for a consecutive sentence. He invited that error. So after the court stated that it believed that the sentence on count one must run concurrently to any other sentences, it asked Mr. Zajack's counsel for his recommendation. And he specifically- Didn't that occur after the court had already said it was going to impose a consecutive sentence? The court said that he believed the consecutive sentence, yes, was required by the statute. So doesn't that tie the hand of defense counsel? No, I don't think so, Your Honor, because in his sentencing memorandum, Mr. Zajack asked for a guideline sentence of 63 to 78 months. So he still could have asked for that sentence, right? He still didn't have to affirmatively say, well, Your Honor, basically he said, I'm changing my recommendation. Now, instead of 63 to 78 months, Mr. Zajack's counsel asked for a sentence of 10 to 11 years specifically. Just so I'm clear, I mean, the argument is the court said, I'm going to do X. And then defense counsel speaks up after that statement. How could the defense counsel have invited the mistake, which was, I'm going to do X? That doesn't seem plausible to me. So what the court actually said was, as I understand it, count one by statute must run concurrent with any of the other sentences. And that's page 83 of volume two. So the court says, my understanding is this. Now, it seems to me that it would be incumbent upon the parties to say, well, with all due respect, Your Honor, your understanding is incorrect. But we didn't have that, right? So there was no actual objection. But there's buy-in from defense counsel when he changes his recommendation from 63 to 78 months to now asking for 10 to 11 years. And he's reached it. That sounds more like plain error than invited error. Well, I couldn't find any 10th Circuit cases where the error came originally from the court. But there are cases in some other circuits, specifically the eighth, where they apply the doctrine of invited error, where the trial court announces its intention to engage in a course of action, and then defense counsel agrees with that. And so there is no 10th Circuit case that I could find that specifically says that. It's an acquiescence argument, in effect. But is it passively acquiescence to say, I used to ask for a 63 to 78 month sentence, but now I want 10 to 11 years, and I want it that way because I want five years on count one and 63 to 78 on the remaining counts? Well, it's a pretty gutsy defense lawyer to invite that kind of sentence and hope that he can win a reversal on appeal. Well, yes. That's why I think it's an invited error. That's exactly why it's an invited error. If defense counsel had just said, well, we still want 63 to 78 months or didn't say, yes, he said, so we're asking for something underneath what he has already served. And furthermore, within the guideline range of the five plus the guidelines added to that consecutively. He didn't have to say that. And once he did, I think the error was invited. But I will admit that I don't have a 10th Circuit case that says if the error starts with the court, it is invited error. But I don't think that's inconsistent with the doctrine of invited error. So even if the court finds that the error was not invited, he still can't prevail because he can't establish that the result of the proceeding would have been different. And I go back to this total sentence of 21 and a half years. The court had explained its desire to impose sentences that were separate and apart from each other for each of these three groups. And it's significant that the court did not impose the mandatory minimum sentence consecutive to the guideline range. It wasn't five plus 63 or even five plus 78. It was triple the mandatory minimum plus 78 months. And Mr. Zajac asked for 10 to 11 years. The court doubled that. So there's really nothing on this record to suggest that the result of the proceeding would have been different if the district court did not misconstrue whether or not it had to provide the sentences consecutively to one another. Are there any other questions on issue two? If not, I'll go to issue one. So I think what would be unfair would be for this court to tag the district court with clear, plain, or obvious error with respect to the allocution claim. All rule 32 requires is for the court to address the defendant personally in order to permit him to speak and or to provide information mitigation. And the court did just that. It addressed him and said, Mr. Zajac, do you wish to make any further statement to the court? And that invitation is objectively clear. And Mr. Zajac would like this statement and this inquiry to be considered in context, but that really doesn't help him. At the sentencing hearing, the court explained, I want, this is a quote, I want to hear from Mr. Zajac, but I believe before I allow him to talk to the court, and before I make a judgment, I would alert you and give you an opportunity to respond as to how I'm thinking about this in the present time. And then later on, the court says, my inclination is, and I want to hear counsel's response, is to break the sentence into three different groups. So it's quite clear from the context that the court was asking defense counsel about the three groups, was not asking Mr. Zajac about the three groups. And then when he actually personally addressed Mr. Zajac, there was no limitation on the statement. So there's really no case that says what the district court did here was plain, clear, or obvious error. And that's what I keep coming back to. The court did what it was required to do by Rule 32. And I don't think it's so clear that Mr. Zajac was all that confused. I think it's a fair reading of what he said to think that the court construed it as a request for a guideline sentence. And nothing more than that. I mean, in real time, I think we can look at it and parse it right now in the cold light of day and say, well, he was confused or he wasn't confused. But we have to think about the district court in that moment, having this colloquy with the defendant and explaining to him what he's going to do and giving the parties the right to discuss this and say whatever they need to say, because the court says it's going to up or depart. I don't think there are any cases that say that this was plain, clear, or obvious error. And I think it would be unfair to tell the district court that it was that. And we also do address in our brief that we don't believe this meets the fourth prong of plain error as well, that based on this transcript, no member of the public could believe that there was an injustice done here and that Mr. Zajac was not provided with an opportunity to present information to the court. And there wasn't really anything here more required than what the district court already did. But as I said, if the court believes that the error was not invited and that Mr. Zajac can establish prejudice, even though he got a 21 and a half year sentence, double what he asked for, then it would go back and the allocution error would resolve itself. Are there any additional questions? All right, counsel. I appreciate the argument. I think we follow that. Ms. Peery had some rebuttal time. You may proceed. Thank you. It is true that the district court gave Mr. Zajac a long sentence on remand, but he gave him a sentence significantly longer or shorter than what the government asked for. The government asked for another 35 year sentence. And it's important to note that what changed between the 2011 sentence and the 2020 sentence was a legal categorization. Nothing changed about what Mr. Zajac was convicted of doing. These were the same offenses. It was that another in the long line of cases deciding what it means to have committed a crime of violence converted his 924C conviction into something that was no longer sustainable. So given that, this is a district court who, in the first instance, gave the shortest sentence he could. He had to give a 30 year mandatory minimum that really did have to be consecutive under 924C, and he had to give a five year mandatory minimum. So he gave him the shortest sentence he could. And when those statutory constraints went away, he went 13 and a half years down. But he still thought he was laboring under a different set of statutory constraints. So what we have in this record is strong evidence that the district court, when he's in the right, range goes down on the sentence for this defendant. He did it before, he could do it again, particularly if he had information and mitigation of the sentence. And I also want to go back briefly to the mitigation point. The counsel for the government brought a few quotes out of what the district court address was. But that was a very, very long address before Mr. Zajac was allowed to speak. And it, in many points, treated Mr. Zajac as though he were one of the lawyers. The court said, I understand counsel's position. I understand Mr. Zajac's position. I've been litigating with Mr. Zajac for many, many years now. And so, and the language that he actually gives the elocution in is almost exactly that which he invites the prosecutor to comment on. I see I've exceeded my time. Thank you. Thank you, counsel. We appreciate the arguments this and the case is submitted.